UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                    :

MIKIKO KITANI,                     :
                                      :

                  Plaintiff,     :
                                      :                      19-CV-1043 (VSB)

          - against -            :
                                      :            **OPINION & ORDER**

NEW YORK CITY TRANSIT et al.,     :
                                      :

                  Defendants.  :
                                      :
--------------------------------------------------------X

<u>Appearances</u>:

Mikiko Kitani
Brooklyn, New York
*Pro se Plaintiff*

Daniel Christian Doeschner
Robert J. Burzichelli
Greenberg Burzichelli Greenberg P.C.
Lake Success, New York

Steve S. Efron
Renee Lucille Cyr
Steve S. Efron, Attorney at Law
New York, New York

Mariel Alyson Tanne
New York City Transit Authority
Brooklyn, NY

*Counsels for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Before me are (1) the motion to dismiss Plaintiff Mikiko Kitani's second amended

complaint, (the "Second Amended Complaint" or "SAC," Doc. 54), filed by Defendants New

York City Transit (the "Transit" or "NYCT"), Andy Byford, Craig Costa, Anthony Cassella, and

Pierre Syldor ("Individual Defendants" and together with Transit, the "Transit Defendants"); and (2) the motion to dismiss filed by Defendant District Council 37 Local 3652 ("Local 3652"). Because Plaintiff's claims are either time-barred or fail to plausibly allege violations of the law, the motions to dismiss of the Transit Defendants and Local 3652 are GRANTED.

## I.   **Factual Background**[1]

Plaintiff is a former employee of Transit and a member of Local 3652.  (SAC ¶ 83, 84.) She suffers from chronic migraine disease.  (*Id.* ¶ 82.)  She began working at Transit as a Permanent Civil Engineer Level I on or about September 3, 2013, (*id.* ¶ 83), and was the only female employee in her "immediate unit," Brooklyn Maintenance of Way ("Brooklyn MOW"), (*id.* ¶¶ 94, 112).  This case arises from Plaintiff's employment at Transit and Local 3652's refusal to represent her in grievance proceedings.

In 2014, Plaintiff filed her first internal complaint with the EEO office at Transit, (*id.* ¶ 111), alleging gender/sex discrimination based on "her then-supervisor's abusive acts and discriminatory employment practices," (*id.* ¶ 110); she later cross-filed the complaint with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission "EEOC" ("EEOC"), (*id.* ¶ 114).  The EEO complaint was later closed "with no specific reason," (*id.* ¶ 114) and the NYSDHR case was also closed upon Plaintiff's attorney's request, (*id.* ¶ 115).  Plaintiff received a "Notice of Right to Sue" from the EEOC dated October 29, 2015.  (*Id.* ¶ 116.)  Thereafter, from late 2014 to September 2019, Plaintiff was subjected to various acts of discrimination, hostility, and retaliation by the Transit

---

[1] The facts contained in this section are largely based upon the factual allegations set forth in Plaintiff's Second Amended Complaint.  I assume the allegations to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.  The Second Amended Complaint spans 82 pages and contains 456 paragraphs.

and its employees, (*see generally* SAC), particularly her supervisors at Brooklyn MOW—

Anthony Casella, an Assistant Chief Officer, (*id*. ¶ 73), Pierre A. Syldor, a Senior Director, (*id*. ¶

77), and Craig Costa, a Director in the Department of Labor Relations at Transit, (*id*. ¶ 69).

Plaintiff was denied opportunities in the field work and overtime assignments from

December 2015 to October 2016, (*id*. ¶¶ 120, 130, 157), notwithstanding that these assignments

were consistent with Plaintiff's job title and were regularly assigned to her male coworkers, (*id*. ¶

130).  Instead, Plaintiff was frequently assigned out-of-title work.[2]  (*Id*. ¶ 136.)  She was also

"paid lower wages and benefits than her male comparators for jobs involving equal work, skill,

and responsibility."  (*Id*. ¶ 195.)  In October 2016, Transit "suddenly and temporarily" resumed

the overtime tour assignments to Plaintiff, but Transit did so while knowing that "due to

[Plaintiff's] own serious health conditions . . . she could not work any overnight tours in addition

to her regular daytime tours."  (*Id*. ¶ 157.)

Moreover, Costa, Casella and Syldor constantly treated Plaintiff with hostility.  Costa

forced Plaintiff to perform overnight assignments despite her medical conditions, and told her to

"get sick and take sick leaves after."  (*Id*. ¶ 161.)  On another occasion, Casella told Plaintiff,

"with a hostile tone of voice," that she was getting less favorable treatments because she was

"special."  (*Id*. ¶ 206.)  Syldor would refuse to speak with Plaintiff or say greetings.  (*Id*. ¶ 135.)

Chun W. Cho, the former senior director at Brooklyn MOW, once told Plaintiff that "no one

wanted her at the Brooklyn MOW."  (*Id*. ¶ 120.)  "[I]ntimidated by . . . [the] open dislike"

displayed by Plaintiff's supervisors, "her peers began avoiding Plaintiff" and "speaking to her in

a whisper and cut short any friendly conversations with her."  (*Id*. ¶ 211.)

---

[2] "Out-of-title-work" is not defined in the Second Amended Complaint; however, it appears that this term means work that was not consistent with Plaintiff's position as a Civil Engineer Level I.  (*See* SAC ¶¶ 112, 136-37.)

During her years employed by Transit, Plaintiff applied for and was denied promotions while Transit regularly promoted her male comparators.  (*See id*. ¶¶ 113, 118, 194.)  Specifically, Transit promoted Gregory P. Neis, a male employee who took "Exam 7012, an open-competitive examination" and ranked at 739 out of the 788 eligible examinees.  (*Id*. ¶ 177.)  On the other hand, Plaintiff took "Exam 7516, a promotional examination," ranked at 178 out of the 662 eligible examinees, but was never promoted.[3]  (*Id*. ¶ 178.)  Transit also denied Plaintiff (1) opportunities for training, (*id*. ¶¶ 132, 155); (2) reimbursement for her Professional Engineer licensure renewal fee, (*id*. ¶ 156); and (3) the Transit-issued iPhone device, (*id*. ¶ 133); in contrast, her male coworkers were provided iPhones and training, (*id*. ¶¶ 132–33).  Moreover, Transit refused to approve and pay Plaintiff for (1) overtime, (*id*. ¶ 127); (2) earned vacation leave (*id*. ¶ 152); (3) bereavement leave, (*id*. ¶ 154); and (4) holiday benefits, (*id*. ¶ 151).  Transit further failed to "compensate[ her] fully" when Plaintiff was suspended from January 2017 to March 2018.  (*Id*. ¶ 190).

In addition, Transit repeatedly interfered with and attempted to force Plaintiff not to use leave to which she was entitled under the Family Medical Leave Act ("FMLA"), despite her approved FMLA status.  (*See id*. ¶¶ 134, 141–49, 175.)  Transit, including Costa, Casella and Syldor, falsely accused Plaintiff of "FMLA abuse, bereavement abuse, FMLA expiration and exhaustion, sick leave fraud, and later disciplined against her."  (*Id*. ¶ 174.)  The discipline led to Plaintiff's suspension for fifteen months.  (*Id*. ¶ 185.)  During the suspension, Plaintiff was not assigned any work hours, such that she was not able to meet the FMLA eligibility requirement of 1,250 worked hours, thus rendering her ineligible for FMLA leave for the year 2018.  (*Id*. ¶ 193.)

---

[3] Apart from Neis, Plaintiff does not identify any other male employee in a similar engineer position who was promoted, or any male employee in a similar engineer position who was paid higher wages.

Further, she was forced to report to the MTA-NYCT Medical Assessment Center ("MAC"), (*id*. ¶¶ 181, 201), to submit blood and urine laboratory tests, (*id*. ¶ 201), although none of her male coworkers were subject to this treatment, (*id*. ¶¶ 201–03).  After MAC placed Plaintiff on a "restricted duty," Transit sent her a memorandum, which, "without any explanation[,] changed the terms, conditions, and privileges of her employment," and forced Plaintiff to sign it.  (*Id*. ¶ 205.)  Thereafter, if Plaintiff remained at her workplace after 4 p.m., she would receive "reprimand emails from Casella and Syldor," (*id*. ¶ 207), while her male coworkers were allowed to stay after 4 p.m. without consequences, (*id*. ¶ 208).  In June 2018, Transit placed Plaintiff on a "NYCT Chronic Sick List; changed the terms, conditions, and privileges of her employment with NYCT; attempted to force her to sign the memo; and then during the coming year 2018 and year 2019, the Defendants . . . kept resending the memo and harassed her."  (*Id*. ¶¶ 216.)  The "NYCT Chronic Sick List is reserved for employees who have excessive unexcused absences, [i.e.] who are suspected of abusing sick leave benefits."  (*Id*. ¶ 217.)  Her supervisors refused to remove Plaintiff from the list despite that Plaintiff presented "doctor's lines" showing that she should not be placed on the list.  (*Id*. ¶ 219.)  Moreover, while the "NYCT Chronic Sick List" requires that employees submit "doctor's lines" for every sick leave, (*id*. ¶ 217), Transit continuously refused to process the "doctor's lines" submitted by Plaintiff "either for minimal errors that could be corrected or for no reason at all," and then denied her requests for sick leave, (*id*. ¶¶ 222–26).  On several occasions, Transit attempted to "obtain [Plaintiff's] private medical records without authorization" by calling her physicians.  (*Id*. ¶¶ 222–26, 235.)

Starting in October 2016, Transit began arbitrarily changing Plaintiff's past timesheet records, some of which dated back to 2015, such that the times she had worked and the vacations she had earned were all changed to "NO PAY."  (*Id*. ¶ 163.)  They also "subtract[ed] monies

from Plaintiff's payrolls," which affected her pension.  (*Id*. ¶ 166.)

In February 2019, Transit initiated a second disciplinary charge against Plaintiff after Plaintiff brought this instant action.  (*Id*. ¶¶ 232–33.)

Throughout the years, Plaintiff reported and complained internally at Transit about these discriminatory, hostile and retaliatory acts, (*id*. ¶¶ 121–23, 137, 215); however, no corrective actions were ever taken, (*id*).

Plaintiff also complained to her union, Local 3652, about various discriminatory, hostile, and retaliatory acts spanning numerous occasions.  (*Id*. ¶¶ 124, 150, 165, 167, 180, 189, 192, 198, 225.)  In May 2016, Local 3652 filed a grievance on behalf of Plaintiff concerning the out-of-title work assignments given to her.  (*Id*. ¶ 137.)  Costa determined that Plaintiff was assigned work consistent with her title.  (*Id*. ¶ 138.)  When Plaintiff sought to appeal this decision by asking Local 3652 to file a "STEP 2" grievance, Local 3652 refused.  (*Id*. ¶ 139.)  When Plaintiff sought to file a "STEP 2" herself, Casella informed Plaintiff that she must be represented by her union.  (*Id*.)  Consequently, Plaintiff was not able to pursue her grievance.  This is the only grievance Local 3652 filed for Plaintiff in response to her requests.

In July 2019, Plaintiff submitted a request for an unpaid leave of absence, (*id*. ¶ 236), and in September 2019, she submitted an extension request for an unpaid leave of absence, (*id*. ¶ 239).  Both were rejected by Transit.  (*Id*. ¶¶ 237, 239.)  Plaintiff asked Local 3652 to file a grievance regarding her rejected request for unpaid leave, but Local 3652 took no action.  (*Id*. ¶ 238.)

## II.   <u>Procedural History</u>

Plaintiff filed her complaint on February 14, 2019.[4]  (Doc. 4.)  On April 26, 2019,

---

[4] Plaintiff attempted to file her complaint on February 1, 2019, but it was rejected due to a filing error.  (Doc. 1.)

Plaintiff filed her amended complaint (the "Amended Complaint").  (Doc. 14.)  By letters dated April 26, 2019, Plaintiff requested that I relieve her counsel so that she could represent herself. (Docs. 6, 12.)  Plaintiff's counsel submitted a letter dated April 29, 2019, requesting to be relieved as Plaintiff's counsel.  (Doc. 7.)  On May 2, 2019, I approved Plaintiff's former counsel's withdrawal request.  (Doc. 8.)  Plaintiff has proceeded pro se since then.

On July 25, 2019, the City of New York file a motion to dismiss.  (Doc. 33.)  On July 26, 2019, Local 3652 also filed a motion to dismiss the Amended Complaint.  (Doc. 37.)  In light of the anticipated motion to dismiss filed by the Transit Defendants, I ordered Plaintiff to file her Second Amended Complaint by September 16, 2019, (Doc. 50), which, after an extension, was filed on September 30, 2019, (Docs. 53, 54).

The Second Amended Complaint alleges claims for:  (1) sex discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), (*id*. ¶¶ 281–314, 374–91); (2) claims under 42 U.S.C. §§ 1981, 1983 and § 1985, (*id*. ¶¶ 322–65); (3) violations of Labor Management Relations Act ("LMRA"), (*id*. ¶¶ 440–44), FMLA, (*id*. ¶¶ 256–62), Americans with Disabilities Act ("ADA"), (*id*. ¶¶ 269–75), and Equal Pay Act ("EPA"), (*id*. ¶¶ 368–71); and (4) certain state law claims including New York State Labor Law ("NYLL") violation, slander, defamation, invasion of privacy, (*id*. ¶¶ 315–21), intentional infliction of emotional distress ("IIED"), (*id*. ¶¶ 392–407), breach of contract, and breach of duty of fair representation ("DFR"), (*id*. ¶¶ 408–44).  (*See also* Doc. 72 at 1–2.) Plaintiff dropped all claims against the City of New York in the Second Amended Complaint.

On November 8, 2019, the Transit Defendants filed their motion to dismiss the Second Amended Complaint, (Doc. 61), seeking to dismiss (1) the FMLA claim against Byford, (2) all

ADA and Title VII claims, (3) § 1983 claims against Transit and Byford as well as claims arising under §§ 1981 and 1985, (4) all EPA claims, and (5) all IIED and defamation claims.  (*See generally* Doc. 61-1 ("Transit Mem.").)  On November 22, 2019, Local 3652 filed its motion to dismiss the Second Amended Complaint, (Doc. 65), seeking dismissal of (1) all DFR claims, and (2) all claims arising under § 1985.  (*See generally* Doc. 67 ("Local 3652 Mem.").)  On January 6, 2020, Plaintiff filed her opposition to Defendants motions to dismiss.  (Doc. 70.)  Local 3652 filed its reply to Plaintiff's opposition on January 22, 2020.  (Doc. 76.)  The Transit Defendants did not file a reply.

On September 22, 2021, Plaintiff filed a letter motion requesting to amend her Second Amended Complaint by including an EEOC Right to Sue Letter dated August 10, 2021, as well as adding a constructive discharge claim against the Transit.  (Doc. 78.)  On October 14, 2021, Local 3652 filed a letter opposing Plaintiff's request to amend the Second Amended Complaint. (Doc. 80.)  Pursuant to my order dated December 1, 2021, (Doc. 81), Plaintiff filed additional information on December 28, 2021, regarding her proposed third amended complaint, attaching her EEOC charge form filed on May 20, 2020, (Doc. 82).  On January 14, 2022, Local 3652 filed an additional letter opposing Plaintiff's request to amend the Second Amended Complaint. (Doc. 83.)  The Transit Defendants filed their opposition to Plaintiff's request on the same day. (Doc. 84.)

### III.   Legal Standards

#### A.  *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted). In a discrimination case, under *Iqbal*, a plaintiff's factual allegations "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed," *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and pro se pleadings should be read "to raise the strongest arguments that they suggest," *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir.

1994) (recognizing that pro se litigants should be accorded "special solicitude").  However, pro

se status "does not exempt a party from compliance with relevant rules of procedural and

substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.

2006) (citation omitted).

### B.  *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1).  While a district

court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in

the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting

jurisdiction[,] . . . . where jurisdictional facts are placed in dispute, the court has the power and

obligation to decide issues of fact by reference to evidence outside the pleadings, such as

affidavits," in which case "the party asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."  *Tandon v. Captain's Cove Marina of*

*Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and citation

omitted).  "A court must liberally construe a pro se litigant's papers when considering a motion

to dismiss under Rule 12(b)(1)."  *Jones v. Nat'l Commun. & Surveillance Networks*, 409 F.

Supp. 2d 456, 465–66 (S.D.N.Y. 2006) (citing *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995)).

Regardless of this liberal construction, however, "jurisdictional requirements are not relaxed

based on a litigant's pro se status."  *Escoffier v. MFY Legal Servs.*, No. 13 Civ. 8089(LGS), 2015

WL 221048, at *1 (S.D.N.Y. Jan. 15, 2015) (citations omitted).  "Notwithstanding the liberal

pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and

may not preside over cases if subject matter jurisdiction is lacking."  *Chestnut v. Wells Fargo*

*Bank, N.A.*, No. 11–CV–5369 (JS)(ARL), 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012)

(citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)).

### IV.   Discussion

#### A.  *Title VII Claims*

##### 1.  **Timeliness of the Claims**

###### a.   Applicable law

"Before an aggrieved party can assert a Title VII claim in federal court, he is generally

required to exhaust the administrative remedies provided by the statute." *Duplan v. City of New

York*, 888 F.3d 612, 621 (2d Cir. 2018).  Such a party must file a charge of discrimination with

the EEOC "within three hundred days after the alleged unlawful employment practice occurred,"

42 U.S.C. § 2000e-5(e)(1), and file an action in federal court within 90 days of receiving a right-

to-sue letter from the agency, 42 U.S.C. § 2000e-5(f)(1).

Courts may excuse a claimant from exhausting administrative remedies with regard to

new violations that are "reasonably related" to the claims that have been previously exhausted

properly; this happens typically when retaliation occurred after the employee filed an EEOC

complaint.  *Duplan,* 888 F.3d at 622; *see also id.* at 624 (explaining that "it would be

burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply

permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying

charge.").  However, the "reasonably related" claims will be excused from the exhaustion

requirement only if they "arise during the pendency of an EEOC investigation or a timely filed

federal case." *Id.* (noting that there is no efficiency-related reason to grant an exception to a

plaintiff "who deliberately abandoned his underlying claim . . . by failing to file a timely suit").

Separately, the continuing violation doctrine provides an exception to the 300-day statute

of limitations set by § 2000e-5(e)(1).  Under the continuing violation doctrine, "if a plaintiff has

experienced a continuous practice and policy of discrimination, the commencement of the statute

of limitations period may be delayed until the last discriminatory act in furtherance of it."

*Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (internal quotation marks

omitted).  In other words, the continuing violation doctrine extends the statute of limitations for

claims arising out of "discriminatory acts committed under an ongoing policy of

discrimination[,] even if those acts, standing alone, would have been barred" by the 300-day

requirement.  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (internal

quotation marks and emphasis omitted) (quoting *Annis v. Cnty. of Westchester*, 136 F.3d 239,

246 (2d Cir. 1998)).  Hostile work environment claims fall under this doctrine if "all acts which

constitute the claim are part of the same unlawful employment practice and at least one act falls

within the [300-day] time period."  *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 279

(S.D.N.Y. 2010) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15

(2002)).  This doctrine, however, does not apply to "discrete discriminatory acts" like

"termination, failure to promote, denial of transfer, or refusal to hire."  *Id.*

### b.   Application

In order to show that she has properly exhausted her administrative remedies, Plaintiff

must present an EEOC right to sue letter associated with the claims she filed in this Court.  Here,

Plaintiff has pointed to two letters.  The first EEOC letter relates to the case she filed in 2015,

(SAC ¶ 114), which involved the allegedly "abusive acts and discriminatory employment

practices" at Transit, (*id*. ¶ 110).  The letter was dated October 29, 2015, (*id*. ¶ 116), more than

three years before Plaintiff filed this lawsuit.  Therefore, Plaintiff's current claims are not

exhausted by her first EEOC letter, because her right to sue associated with that letter has

expired 90 days after she received it.  42 U.S.C. § 2000e-5(e)(1).  Plaintiff may not rely on the reasonably related doctrine to save the alleged violations that occurred after the first right to sue letter, because for the reasonably related doctrine to apply, Plaintiff still must bring a federal action within 90 days of receiving the first letter, which she failed to do.  *See Duplan*, 888 F.3d at 624 (declining to apply the reasonably related doctrine where the plaintiff failed to timely file suit after receiving the right to sue letter).

Therefore, Plaintiff can only rely on the second EEOC letter to show exhaustion of administrative remedies.  That letter was dated August 10, 2021, and relates to Plaintiff's second EEOC case filed on May 20, 2020.  (*See* Docs. 78 & 82.)  Plaintiff's second EEOC charge letter, which was filed against Transit after the commencement of this lawsuit, states that she is "female and ha[s] a disability" and "because of that [she] ha[d] been subject to retaliation and discriminated against [sic]."  (Doc. 82, at 3.)  Although Plaintiff filed this lawsuit before she filed her second EEOC case, she has now obtained the right to sue letter.  Therefore, I accept Plaintiff's complaint as timely under the 90-day requirement.  *See Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 145 (D. Conn. 2012) ("Courts in this circuit have found that a plaintiff who commences a Title VII action before receiving a right-to-sue letter may nonetheless maintain the action upon subsequent receipt of the letter."  (internal quotation marks omitted)); *Brunson-Bedi v. New York (Hudson Valley DDSO)*, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *4 (S.D.N.Y. May 1, 2018) ("[W]here a plaintiff has received a right to sue letter subsequent to commencement of a Title VII action and while the federal action is still pending, the statutory exhaustion requirements have been met based on equitable principles."  (internal quotation marks omitted)).  Accordingly, only conduct that occurred within 300 days before Plaintiff filed her second EEOC case, i.e. conduct that occurred after July 24,

2019, can be considered properly exhausted.  *See* 42 U.S.C. § 2000e-5(e)(1); *see also Duplan*, 888 F.3d at 624 (finding that only acts occurred within 300 days of the plaintiff's second EEOC complaint was properly exhausted because the plaintiff failed to timely exhaust claims in his first EEOC complaint).[5]

The only alleged conduct of Transit that potentially occurred after July 24, 2019 is Transit's rejection of Plaintiff's request for an unpaid leave of absence,[6] as well as Transit's rejection of Plaintiff's extension request for an unpaid leave of absence.  (SAC ¶¶ 237, 239.) These allegations cannot support Plaintiff's hostile work environment claim, because, just like termination of employment or discontinuance of a job assignment, rejection of a request for an unpaid leave is a single, completed act that is "discrete" in nature and "cannot revive otherwise untimely acts" that were outside the 300-day period.  *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 582 (S.D.N.Y. 2017) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)); *see also id.* at 583 (clarifying that "discrete acts" cannot be part of a hostile work environment claim) (citing *Butler v. Coca—Cola Refreshments USA, Inc.*, No. 12 Civ. 1791(BMC), 2013 WL 3324995, at *3 (E.D.N.Y. July 1, 2013)).  The same applies to Plaintiff's extension request.  Consequently, Plaintiff cannot rely on the continuing violation doctrine to save her allegations concerning events and acts that occurred before July 24, 2019, because no acts that could support her hostile work environment claim fall within the 300-day period.  *Percy*, 264 F. Supp. 3d at 582 (requiring "at least one act contributing to the claim occur[ring] within the [300-day] filing period" for the continuing violation to apply).[7]

---

[5] The Transit Defendants seem to acknowledge that conduct that occurred after July 24, 2019 are properly exhausted.  *See* Doc. 84 at 2 (noting that "the new EEOC charge does not revive the ADA and Title VII claims predicated on conduct that occurred prior to . . . July 24, 2019.").

[6] Plaintiff alleges that this incident took place in July 2019 without specifying the date.

[7] Similarly, Plaintiff's proposed constructive discharge claim cannot help to revive the otherwise time-barred conduct either, because, even if the constructive discharge claim is itself timely, it is still "a discrete act that does not

Therefore, Plaintiff fails to meet the exhaustion requirement for all of the conduct alleged in the Second Amended Complaint, with the exception of Transit's rejection of Plaintiff's unpaid leave of absence request in July 2019 and its rejection of Plaintiff's extension request for an unpaid leave of absence in September 2019, which are each discrete act that can only support her discrimination and retaliation claims.  I will proceed to address these claims.

### 2.  Merits of the Claims

#### a.  Discrimination Claim

To survive a motion to dismiss a Title VII discrimination claim, "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 86–87 (2d Cir. 2015) (citing *Littlejohn*, 795 F.3d at 311).  The plaintiff only needs to allege that "(1) the employer took adverse action against [them], and (2) [their] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Id.* at 87.  However, there must be facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Id.* at 85 (quoting *Littlejohn*, 795 F.3d at 311).

Here, Plaintiff simply alleges that in "[a]bout July 2019, [the Transit Defendants] rejected and refused and failed to process Plaintiff's request for an leave of absence form" and that in "[a]bout September 2019, [the Transit Defendants] rejected and refused and failed to process Plaintiff's extension request for an unpaid leave of absence form."  (SAC ¶¶ 237, 239.)  Plaintiff does not explain whether she met the requirements for taking such leave, whether Transit gave any reasons or comments for its denial of the leave, or whether her male coworkers enjoyed

---

render the alleged conduct that came before it timely."  *Antrobus v. N.Y.C. Health & Hosps. Corp.*, 19 Civ. 7449 (KPF), 2021 WL 964438, at *7 (S.D.N.Y. Mar. 15, 2021); *see also Gaston v. N.Y City Dep't of Health Off. of Chief Med. Examiner*, 432 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (dismissing the constructive discharge claims as untimely because it was a "discrete act [to which] the 300-day limit applies . . . distinctly.").

more favorable treatment when they requested such leave.  The generic and conclusory allegations here, without more, do not move plaintiff's gender discrimination claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Plaintiff also alleges that she "was the only female in her immediate unit," that Transit paid her lower than her male counterparts and denied her employer-issued devices, training opportunities, and promotions over the years.  (SAC ¶¶ 94, 113, 118, 132–33, 155–56, 194–95.)  First, as discussed, these alleged incidents occurred before July 24, 2019, and therefore cannot be basis for discrimination claims.  *See infra*.  Even if I consider these allegations not as basis for discrimination claims, but as "bits and pieces of information" that might "support an inference of discrimination," *Vega*, 801 F.3d at 86 (internal quotation marks omitted), they are still not sufficient to demonstrate that Transit's denial of Plaintiff's leave requests in July and September 2019 was motivated by discriminatory animus based on her gender.  Therefore, this discrimination claim must be dismissed.

### b.  Retaliation Claim

The allegation that Transit denied Plaintiff's request for an unpaid leave of absence can be construed to support a retaliation claim, given that this incident took place after Plaintiff filed the complaint in this action.  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against h[er], (2) because [s]he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90.  A retaliation is actionable under Title VII only if it is "materially adverse," i.e. if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (cited in *Taylor v. City of New York*, 207 F. Supp. 3d 293, 307 (S.D.N.Y.

2016)).  "[P]etty slights or minor annoyances" in the workplace are "nonactionable."  *Id.* at 68–69.  Moreover, unlike discrimination claims under Title VII, where a plaintiff only needs to allege that the adverse employment action is at least in part motivated by discriminatory animus, for retaliation claims, a plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action.  *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

The allegations in the Second Amended Complaint do not plausibly allege that Transit's denial of Plaintiff's requested for an unpaid leave of absence is a "materially adverse action" that amounts to retaliation.  As already mentioned, Plaintiff never explains whether she met the requirements to take such leave, nor does she mention the length of the leave she was seeking—whether it be days, weeks, or months—or the reason she was applying to take leave at that point in time, or how the denial of her leave request impacted her.  There is simply no factual allegation for me to assess whether the denial of such leave would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Taylor*, 207 F. Supp. 3d at 307 (finding the allegations of a transfer in job not sufficient for the court to determine whether it was a materially adverse employment action, because the plaintiff "d[id] not provide any information as to how the transfer impacted her").

Further, Plaintiff fails to allege but-for causation.  A plaintiff can demonstrate but-for causation through temporal proximity, *Vega*, 801 F.3d at 91, and the Second Circuit "[has] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).  Instead, courts should exercise their judgement based on "the context of particular cases."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).  Plaintiff filed the lawsuit

against Transit—which is a protected activity—on February 1, 2019, (Doc. 1), and Transit denied her request in July 2019; there is a six-month time gap.  In cases where courts have found more than five-month gaps to be sufficient to support but-for causation, there was generally circumstantial evidence or allegations to support such a finding of causation.  *See e.g. Summa*, 708 F.3d at 128 (finding seven months to be sufficient to show causation and noting the supervisor's comments and personal knowledge of the plaintiff's protected activity); *Rasmy v. Marriott Int'l Inc.*, 952 F.3d 379, 392 (2d Cir. 2020) (finding five months sufficient to show causation and noting the supervisor's verbal abuse).  On the other hand, when no factual allegations of retaliatory motive are present, the mere assertion that an adverse action occurred more than five months after the protected activity took place has not been found sufficient to show causation.  *See e.g. Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (finding five months insufficient when plaintiff "alleges no evidence (direct or circumstantial) of retaliatory motive"); *Torre v. Charter Commc'ns., Inc.*, 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) (finding that certain alleged retaliatory acts by the employer were not actionable because they "took place more than five months after engaging in protected activity and [p]laintiffs d[id] not allege any other evidence of a causal connection").  Here, Plaintiff fails to allege any factual allegations to support a plausible showing that Transit's conduct, even assuming it was "materially adverse," would not have taken place but for Plaintiff's filing a federal action against it.  Therefore, the retaliation claims must be dismissed.

Consequently, all of Plaintiff's Title VII claims in the Second Amended Complaint are dismissed.

### B.    *ADA Claims*

Claims under ADA are also subject to the 300-day statute of limitations.  *Paneccasio v.*

*Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008).  For the same reasons as noted

above, the only actionable conduct under the Second Amended Complaint for Plaintiff's ADA

claim is Transit's rejection of her request for an unpaid leave.  *See infra*.  Again, for the same

reasons discussed above, Plaintiff does not present factual allegations that could provide "at least

minimal support for the proposition that the employer was motivated by discriminatory intent."[8]

*Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 265 (E.D.N.Y. 2015) (quoting *Vega*, 801 F.3d at

85) (applying the "minimal" pleading burden articulated in *Vega* to ADA claims).  Therefore,

Plaintiff's ADA claims must also be dismissed.

**C.**      ***FMLA as to Defendant Byford***

FMLA provides that employees are entitled to "reasonable leave for medical reasons," 29

U.S.C. § 2601(b)(2), and makes it "unlawful for any employer to interfere with, restrain, or deny

the exercise of or the attempt to exercise" the right to have such medical leave, 29 U.S.C. §

2615(a)(1).  Employers are prohibited from "discriminating or retaliating against an employee or

prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. §

825.220(c).

An individual may be held liable under the FMLA only when they are an "employer" as

defined by the FMLA, which includes "any person who acts, directly or indirectly, in the interest

of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I).  To

determine whether an individual is an "employer" under FMLA, the Second Circuit adopted the

"economic-reality test" from the Fair Labor Standard Act, which looks at "whether the alleged

employer possessed the power to control the worker in question, with an eye to the 'economic

---

[8] Nothing in this Opinion & Order should be read as my opining on the constructive termination claim Plaintiff seeks to add in her third amended complaint.

reality' presented by the facts of each case." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Factors to consider under the economic-reality test "include," but are not limited to:  "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 422.  In short, courts ask "whether the putative employer 'controlled in whole or in part plaintiff's rights under the FMLA.'"  *Id*. at 423 (quoting *Noia v. Orthopedic Assocs. of Long Island*, 93 F. Supp. 3d 13, 16 (E.D.N.Y. 2015)).  In the context of a motion to dismiss, however, "Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, he must simply plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated." *Smith v. Westchester County*, 769 F. Supp. 2d 448, 475–76 (S.D.N.Y. 2011) (internal quotation marks omitted).

Here, Plaintiff asserts FMLA claim against Defendant Byford, the president of Transit. However, Plaintiff did not make any substantive allegations against Byford, only noting that he "ha[s] been and is now aware of her serious condition."  (SAC ¶ 63.)  Such an allegation does not support the proposition that Byford had substantial control over Plaintiff's FMLA leave. *See Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017) (dismissing pro se Plaintiff's FMLA claim against a defendant who allegedly "failed or refused to act to stop" certain discriminatory conduct in violation of FMLA, because "there are no allegations related to [defendant's] control over Plaintiff's FMLA leave nor the four factors listed in the economic reality test"); *Knight v. County of Cayuga*, 5:19-CV-712, 2019 WL 5067901, at *10 (N.D.N.Y. Oct. 9, 2019) (dismissing FMLA claim against a defendant where "no allegation[s] . . .

establish[ed] that [defendant] had control over plaintiff's FMLA leave"); *Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 151 (D. Conn. 2014) (dismissing FMLA claim on summary judgment where plaintiff only alleged that the defendant is "the highest ranking official" within the organization and "had authority over all personnel decisions," but did not provide evidence showing that the defendant "actually exercised any of this authority in relation to [plaintiff]'s FMLA rights").

Therefore, the FMLA claim against Byford is dismissed.  Because the Transit Defendants do not move to dismiss Plaintiff's FMLA claims against Transit, Costa, Cassella, and Syldor, these claims remain.

### D.     *The EPA Claim*

The EPA prohibits an employer from "paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs" that "require[] equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ."  29 U.S.C. § 206(d)(1).  To establish an EPA claim, a plaintiff must demonstrate that "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions."  *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (internal quotation marks omitted).  A "plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'"  *E.E.O.C. v. Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Here, apart from briefly mentioning that she was "paid lower wages and benefits than her male comparators for jobs involving equal work," (SAC ¶ 195), Plaintiff makes no factual

allegations as to the duties or content of the job of her male coworkers, nor does she mention that she and her male coworkers performed work under similar working conditions. "Given the complete absence of any factual allegations whatsoever relating to actual job content or working conditions," *Weinreb v. Xerox Bus. Servs., LLC Health & Wellness Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018), I must dismiss Plaintiff's EPA claim. *See id.* at 519 ("The Second Circuit has made clear that the EPA pleading standard is 'demanding.' (quoting *Port Auth. of N.Y. and N.J.*, 768 F.3d at 255–56)) (dismissing the EPA claims when all plaintiffs made was the conclusory assertion that the two groups of employees receive unequal benefits).

   E.  ***Sections 1983 and 1985***[9]

     **1.  Section 1983**

  Section 1983 applies by its terms "only to individual 'persons' responsible for violating plaintiffs' rights." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) (footnote omitted). In other words, it does not impose vicarious liability, and a plaintiff can succeed on a § 1983 claim if they allege that defendant "personally violated a plaintiff's constitutional rights." *Id.* A plaintiff, however, can establish liability against a municipality if they allege "the challenged acts were performed pursuant to a municipal policy or custom," *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004), or if the constitutional injury was caused by the municipal "organization's failure to train." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("The failure to train or supervise a municipal employee may be properly thought of as a city policy or custom that is actionable under § 1983." (internal quotation marks omitted)). "[C]onclusory allegations that a

---

[9] Plaintiff's claim under § 1981 cannot stand because § 1981 only concerns discrimination on the basis of race. *See Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 290 (S.D.N.Y. 2005) ("[Section] 1981 is concerned only with discrimination on the basis of race.") Plaintiff neither directly claims racial discrimination nor provides any factual allegations that would allow me to construe any of her claims as a racial discrimination claim.

municipality failed to train and supervise its employees are insufficient to [establish municipal liability under § 1983] absent supporting factual allegations."  *Holland v. City of New York*, 197 F. Supp. 3d 529, 552 (S.D.N.Y. 2016).  "For purposes of determining plaintiffs' rights to sue under Section 1983 . . . the acts of the [Transit] are attributable to a local government agency." *See also Burka v. New York City Transit Authority*, 739 F. Supp. 814, 819 (S.D.N.Y. 1990).

Here, Plaintiff merely alleges that she suffered injuries because Transit and Byford failed to "train and to supervise its employees . . . in regard to employees' rights [sic]."  (SAC ¶ 342.) Besides this general and conclusory allegation, she "does not plead any facts that suggest, even circumstantially," that Transit or Byford did fail to train the Transit employees with regard to the employees' rights, *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (dismissing § 1983 failure to train claim against the municipality because the plaintiff merely alleged, in conclusory terms, that the city "failed to take the steps necessary to train" its employees).  Further, Plaintiff did not allege any personal involvement of Byford in depriving her of any constitutional rights, nor does she allege a municipal policy or custom that resulted in her being deprived of constitutional rights.  Therefore, Plaintiff's claims under § 1983 against Transit and Byford must be dismissed.  Because the Transit Defendants do not move to dismiss the § 1983 claims against Costa, Cassella, or Syldor, these claims remain.

## 2.  Section 1985

To plead a claim under Section 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of a citizen of the United States."  *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (citation omitted).  The "conspiracy must also be motivated by some racial or

perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."
*Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006); *see also Williams v. Rosenblatt Sec. Inc.*,
136 F. Supp. 3d 593, 609 (S.D.N.Y. 2015).  "A plaintiff 'must further provide some factual basis
supporting a meeting of the minds, such as that defendants entered into an agreement, express or
tacit, to achieve the unlawful end,' along with 'some details of time and place and the alleged
effects of the conspiracy.'"  *Benzinger v. NYSARC, Inc.*, 385 F. Supp. 3d 224, 236 (S.D.N.Y.
2019) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).  "Conclusory
allegations of conspiracy are not sufficient to state a claim under § 1985."  *Sklodowska-Grezak v.
Stein*, 236 F. Supp. 3d 805, 809 (S.D.N.Y. 2017) (citing *Porter v. Selsky*, 287 F. Supp. 2d 180,
187 (W.D.N.Y. 2003)).

The Second Amended Complaint is simply devoid of any allegation suggesting that there
was a "meeting of the minds" among the Transit Defendants and Local 3652, not to mention any
"details of time and place . . . of the conspiracy."  Therefore, the § 1985 claims must be
dismissed.

### F.     *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress ("IIED") under New York
law, "[a] plaintiff must allege:  (1) extreme and outrageous conduct; (2) intent to cause, or
reckless disregard for a substantial probability of causing, severe emotional distress; (3) a causal
connection between the conduct and the injury; and (4) severe emotional distress."  *Hanly v.
Powell Goldstein, L.L.P.*, 290 F. App'x 435, 440 (2d Cir. 2008) (citing *Stuto v. Fleishman*, 164
F.3d 820, 827 (2d Cir. 1999)).  The conduct challenged must be "so outrageous in character, and
so extreme in degree, as to go beyond all possible bounds of decency to be regarded as atrocious,
and utterly intolerable in a civilized society."  *Sandia v. Wal-Mart Stores, E. LP*, 699 F. App'x

64, 65 (2d Cir. 2017) (quoting *Stuto*, 164 F.3d at 827).  "New York courts have been 'very

strict'" in assessing whether a plaintiff has pleaded the "elements" of an IIED claim.  *Gay v.*

*Carlson*, 60 F.3d 83, 89 (2d Cir. 1995).

Here, Plaintiff seeks to recover damages for IIED based on Defendants' allegedly

discriminatory conduct during her employment.  "New York courts are particularly reluctant" to

allow IIED claims in employment discrimination cases.  *Cowan v. City of Mount Vernon*, 95 F.

Supp. 3d 624, 656 (S.D.N.Y. 2015) (citation omitted).  Although courts have allowed such

claims where they were accompanied by allegations of sex discrimination, those cases usually

involve "sexual battery."  *Id.* at 657 (claim stated based on multiple instances of sexual battery);

*T.P. v. Elmsford Union Free Sch. Dist.*, No. 11 CV 5133 (VB), 2012 WL 860367, at *12

(S.D.N.Y. Feb. 27, 2012) (allowing IIED claim to proceed where "plaintiff . . . alleged a sexual

battery"); *cf. Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 440–41 (S.D.N.Y. 1998)

("In the sexual harassment context, it appears that for an IIED claim to survive a summary

judgment motion, sexual battery should be alleged."); *Coraggio v. Time Inc. Magazine Co.*, No.

94 Civ. 5429, 1995 WL 242047, at *6 (S.D.N.Y. April 6, 1995) (allegations of assigning plaintiff

"tasks normally performed by lower-level employees," calling plaintiff at home on scheduled

days off, usurping plaintiff's responsibilities, "and generally isolating and ignoring her" not

sufficient for IIED); *Walz v. Am. Stock Exchange, Inc.*, No. 91 Civ. 7964 (LMM), at *3

(S.D.N.Y. Sept. 13, 1992) (assignment of plaintiff to unsophisticated tasks, exclusion from

important meetings, and isolation in distant office in retaliation for registering sex discrimination

complaint not sufficient for IIED).  Plaintiff does not allege sexual battery, and the allegations of

assigning her off-title work, denying her various opportunities and benefits, and occasionally

speaking with her in a hostile tone do not arise to the level of extreme and outrageousness

conduct to plausibly allege an IIED claim.  Therefore, Plaintiff's IIED claim must be dismissed.[10]

### G.     *Defamation Claims*

"Defamation is the invasion of an interest in reputation and good name." *Tannerite Sports, LLC v. NBC Universal Media LLC*, 135 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) (*Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)).  It includes "the twin torts of libel and slander," *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (citing *Albert*, 239 F.3d at 265).  "Whereas slander pertains to claims of allegedly defamatory words that are spoken and heard, libel concerns statements that are written and read." *Tannerite Sports*, 135 F. Supp. 3d at 232.  "To state a defamation claim under New York law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused 'special damages." *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)).

"New York law recognizes a qualified common interest privilege when the allegedly defamatory statement is made between persons who share a common interest in the subject matter." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010).  Specifically, when the offending communication was made "by supervisors or co-workers . . . in connection

---

[10] The Transit Defendants argue that even if Plaintiff can establish her IIED claim, the claim still must be dismissed because in New York, "[p]ublic policy bars claims alleging [intentional infliction of emotional distress] against governmental entities."  (Transit Mem. 13 (citing *Rodrigues v. Family Justice Ctrs.*, No. 18-CV-6999 (JPO), 2019 WL 1988526, at *4 (S.D.N.Y. May 6, 2019).)  As the Transit Defendants only devote two sentences to this argument, the issue is not sufficiently briefed.  Further, the Transit Defendants point to no case law suggesting that an organization like the Transit is considered a "government entity" for the purposes of the IIED bar in New York. Therefore, I do not address whether the IIED claim against the Transit is barred by the public policy in New York.

with the evaluation of an employee's performance, including allegations of employee

misconduct and communications regarding the reasons for an employee's discharge," such

persons will be afforded a qualified immunity from a defamation suit. *Albert*, 239 F.3d at 272.

However, this privilege does not apply when the statement in question was made with malice.

*Id*.  "At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging

that the defamatory statement was motivated solely by common law or constitutional malice."

*Thai*, 726 F. Supp. 2d at 330. "Common-law malice means spite or ill will, and will defeat the

privilege only if it is the one and only cause for the publication;" "[c]onstitutional or actual

malice means publication with a high degree of awareness of the publication's probable falsity or

while the defendant in fact entertained serious doubts as to the truth of the publication."  *Id*.

(internal quotation marks omitted) (quoting *Konikoff v. Prudential Ins. Co. of Am*., 234 F.3d 92,

98 (2d Cir. 2000)).

Here, Plaintiff alleges that Costa made statements that Plaintiff "abused FMLA and

bereavement benefits" and "committed fraud by stealing sick leave benefits," which were "false,

injurious, and defaming."  (SAC ¶ 315, 392–93.)  Such statements are afforded the qualified

common interest privilege. *See Albert*, 239 F.3d at 272.  She further alleges that these statements

were made "with actual malice motivated by vendetta to procure her disciplinary actions with a

full intent to ultimately terminate her."  (*Id*. ¶ 319.)  However, apart from this conclusory

assertion, which I need not and do not take as true, *Iqbal*, 556 U.S. at 678, Plaintiff does not

make any factual allegations to support the proposition that Costa was aware of the falsity of his

statements or that he had serious doubts to their truthfulness.  Accordingly, Plaintiff's

defamation claims, including the slander claim, must be dismissed.  *See, e.g.*, *Fuji Photo Film*

*U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 415–16 (S.D.N.Y. 2009) (dismissing plaintiff's

defamation claim where the allegations that the employer acted maliciously are "conclusory and unsupported by any factual allegation"); *Hosain-Bhuiyan v. Barr Labs., Inc*., 17 CV 114 (VB), 2017 WL 4122621, at *5 (S.D.N.Y. Sep. 13, 2017) (same).

### H.     Breach of DFR and Contract Claims

#### 1.  The Federal DFR Claim

The federal DFR claims arises under the Labor Management Relations Act ("LMRA"), *see* 29 U.S.C. § 159(a), and the National Labor Relations Act ("NLRA"), *see* 29 U.S.C. § 185. However, both statutes exclude "political subdivisions" of the state from the definition of "employer," which means that public employees cannot bring claims under NLRA and LMRA provisions.  *See Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) (citing 29 U.S.C. § 152 (providing that an employer under NLRA "shall not include . . . any State or political subdivision thereof") and § 142(3) (equating the definition of "employer" under the LMRA with the definitions under the NLRA)).  Therefore, "[i]t is well settled that this Court lacks subject matter jurisdiction over DFR claims brought by employees of political subdivisions."  *Gear v. Dep't of Educ.*, No. 07 Civ. 11102(NRB), 2010 WL 5297850, at *3 (S.D.N.Y. Dec. 21, 2010) (citation omitted), *aff'd*, 472 F. App'x 67 (2d Cir. 2012); *see also Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (affirming the district court's dismissal of the DFR claim brought by public employees, holding that federal courts lack subject matter jurisdiction over such claims).

"'Political subdivisions' within the meaning of the LMRA are 'entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'"  *Ross v. Transp. Workers Union of Greater N.Y., AFL-CIO*, No. 11 Civ.

9185(SAS), 2013 WL 6506203, at *3 (S.D.N.Y. Dec. 11, 2013) (citation omitted).  Transit has

"explicitly been held to be [a] political subdivision[] of the State of New York for the purpose of

the LMRA" as well as NLRA.  *See Sales v. Clark*, No. 14-CV-8091 (PAC)(SN), 2017 WL

892609, at *5 (S.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 924239

(S.D.N.Y. Mar. 6, 2017); *see also Jackson v. N.Y.C. Transit*, No. 05-CV-1763 (FBLB), 2005 WL

2664527, at *3 n.3 (E.D.N.Y. Oct. 17, 2005) (declining to address DFR claims under LMRA and

NLRA against Transit because "these statutes do not vest federal district courts with subject

matter jurisdiction over claims, as here, by public employees against their unions" (citation

omitted)).  Therefore, to the extent that Plaintiff asserts DFR claims under LMRA and NLRA

against Transit, such claims must be dismissed for lack of subject matter jurisdiction.  *See, e.g.*,

*Majied v. N.Y.C. Dep't of Educ.*, 16-CV-5731 (JMF), 2018 WL 333519, at *4 (S.D.N.Y. Jan. 8,

2018) (dismissing a pro se Plaintiff's DFR claim against her union because she was a public

employee).

### 2.  The State DFR Claim

Defendants argue that even if I construe Plaintiff's DFR claim as arising under N.Y. Civ.

Serv. Law § 209-a, the claim still fails.  Citing *Martin v. Curran*, 303 N.Y. 276 (1951),

Defendants point out that Plaintiff fails to plead that every member of the union ratified the

union's conduct, which is required under New York law to hold an unincorporated association

like Local 3652 liable.  (Local 3652 Mem. 12–13); *see also Martin*, 303 N.Y. at 280 (explaining

that "a voluntary, unincorporated membership association" like a union "has no existence

independent of its members").  However, the *Martin* rule is "heavily tied to common-law

principles."  *Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 511

(S.D.N.Y. 2011) (finding that the labor organization has an existence independent of its members

under the statute that specifically charges it with liability for certain wrongdoing); *see also*

*Moleon v. Alston*, 21 Civ. 1398 (PAE), 2021 WL 5772439, at *11 (S.D.N.Y. Dec. 3, 2021)

(collecting cases where the *Martin* rule was applied to common law claims).  Where a statute

"specifically charged labor organizations . . . with liability [for certain wrongdoing], it has

evinced the Legislature's judgment that for the purposes of the statute, contrary to *Martin's*

holding, that the labor organization does have an existence independent of its members."

*Langford*, 765 F. Supp. 2d at 511.  *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140 (2014), the

most recent Court of Appeals case that affirmed the continued viability of the *Martin* rule,

specifically mentioned that the *Martin* rule did not prohibit union members who are public

employees to bring an action pursuant to the Taylor Law, Civil Service Law § 200 et seq., for a

breach of DPR claim.  *See id.* at 152.[11]

Although Plaintiff's claim is not barred by the *Martin* rule, it is barred by the four-month

statute of limitations under the Taylor Law.  *See* N.Y. C.P.L.R. § 217(2)(a) ("Any action or

proceeding against an employee organization . . . which complains that such employee

organization has breached its duty of fair representation . . . shall be commenced within four

months of the date the employee or former employee knew or should have known that the breach

has occurred, or within four months of the date the employee or former employee suffers actual

harm, whichever is later."); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per

curiam) (dismissing the DPR claim under the Taylor Law against the union as time-barred

because "[u]nder New York state law, a claim against a union for violating the duty of fair

---

[11] *Palladino* only mentioned bringing a claim under Taylor Law before the New York State Public Employment Relations Board ("PERB"), 23 N.Y.3d 140 at 152, which usually has exclusive jurisdiction over such claims, *Klika v. Tuckahoe Police Org., Inc.*, No. 18-cv-5031 (NSR), 2020 WL 2097606, at *5 (S.D.N.Y. May 1, 2020) (citing N.Y. Civil Service Law § 205(5)(d)).  However, "there is an exception to PERB's exclusive jurisdiction when a claim is for a union's breach of the duty of fair representation."  *Id.*; *Ifill v. N.Y.S. Court Officers Ass'n*, 655 F. Supp. 2d 382, 392 n.2 (S.D.N.Y. 2009).

representation is subject to a four-month statute of limitations."); *Ahmad v. White Plains City Sch. Dist.*, 18-CV-3416 (KMK), 2019 WL 3202747, at *11–12 (S.D.N.Y. July 15, 2019) (same). The four-month statute of limitation starts to run when the employee "knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later."  N.Y. C.P.L.R. § 217 (2)(a).

Plaintiff commenced this action on February 1, 2019.  To be timely, the claim must be accrued on or after October 1, 2018—four months before the commencement of this action. Plaintiff alleges that Local 3652 "did not fairly represent [her] or defend her adequately" in response to the various requests from her to file a grievance.  (SAC ¶ 417, *see also* ¶¶ 124, 150, 165, 167, 180, 189, 192, 198, 225).  She should have been aware that she had a potential breach of DFR claim against Local 3562 as soon as it became clear each time that Local 3652 would not be filing the requested grievance on her behalf.  Therefore, all of Local 3652's conducts before October 1, 2018—four months before the filing of this lawsuit—are time-barred.

The only allegation regarding Local 3652's conduct after October 1, 2018 is its refusal to file a grievance regarding Plaintiff's request for an unpaid leave of absence form, which took place in July 2019.  (SAC ¶ 238.)  "New York courts have followed the same general standard as federal courts in weighing claims by public employees alleging breaches of the duty of fair representation:"  "a plaintiff must allege facts that show either arbitrary, discriminatory or bad faith conduct on the part of the union."  *Cunningham*, 234 F. Supp. 2d at 398 (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)); *see also Oparaji v. United Fed'n of Teachers*, 418 F. Supp. 2d 139, 147 (E.D.N.Y. 2006) (Taylor Law provides that "a union breaches its duty of fair representation if its actions are 'deliberately invidious, arbitrary or founded in bad faith.'" (citing *Civil Service Employees Ass'n, Inc. v. Pub. Empl. Relations Bd.*,

522 N.Y.S.2d 709 (3d Dep't 1987), *aff'd*, 73 N.Y.2d 796 (1988))). Even "irresponsible or grossly negligent" conduct does not constitute a breach of DFR if it "lacks an improper motive." *Oparaji*, 418 F. Supp. 2d at 147.

Here, all Plaintiff has alleged is that she requested Local 3652 to file the grievance for her and that Local 3652 "took no action." (SAC ¶ 238.) Plaintiff did not provide more details regarding her communication with Local 3652, any reasons Local 3652 provided for failure to act, or any other factual allegations to show that Local 3652 was acting in bad faith or from which an inference of bad faith could be found. The mere assertion that Local 3652's conduct was "arbitrary, discriminatory, in bad faith," (SAC ¶ 420), was insufficient to plausibly allege this claim, which must be dismissed.

### 3. The Breach of Contract Claim

Plaintiff seeks to bring "a hybrid claim" for breach of DFR and the collective bargaining agreement ("CBA") between Local 3652 and Transit. (SAC ¶ 409.) However, the so-called "hybrid § 301 claim" refers to a hybrid claim involving a breach of the federal DFR, which, as explained, cannot be asserted by public employees like Plaintiff. *See Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) ("[A] suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation [under NLRA] by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'" (citations omitted)). Under New York law, "only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer." *Bd. Of Educ. v.* Ambach, 70 N.Y.2d 501, 508 (1987). Because Plaintiff failed to allege that Local 3652 breached its DFR, she cannot proceed with her breach of contract claim against Transit in this Court. *See Yoonessi v. State*, 735 N.Y.S.2d 900, 903 (4th Dep't 2001)

(dismissing the breach of contract claim against the employer because the plaintiff failed to allege that the union breached its DFR); *Sinacore v. State*, 716 N.Y.S.2d 412, 414 (3rd Dep't. 2000) (same).  Further, as I have dismissed Plaintiff's DFR claim for failure to state a claim, any attempt to replead this breach of contract claim would be futile.  Consequently, the dismissal of the breach of contract claim is with prejudice.  *See Peterec-Tolino v. New York*, 364 F. App'x 708, 711 (2d Cir. 2010) (affirming district court's sua sponte dismissal of the claim because "any amendment would be futile"); *DeJesus-Vasquez v. Bethencourt*, No. 19-CV-967 (KMK), 2020 WL 1047909, at *7 (S.D.N.Y. Mar. 4, 2020) ("[T]his Court has the inherent authority to sua sponte dismiss frivolous claims, even in pro se cases.").

## V.   The Invasion of Privacy Claim

Plaintiff alleges that Transit forced her to "report to [] MAC and submit to blood and urine laboratory work, which were privacy invasion," and that Defendant Costa "wrongly intruded into her private and personal activities in such a manner as to cause outrage or mental suffering."  (SAC ¶¶ 321, 429.)  However, "New York does not recognize a common law right to privacy claim."  *Sweigert v. Goodman*, No. 1:18-cv-08653 (VEC) (SDA), 2020 WL 8918876, at *3 (S.D.N.Y. Oct. 8, 2020); *Benistar Admin Servs., Inc. v. Wallach*, CV 17-4296 (RRM)(AYS), 2021 WL 1394058, at *5 (E.D.N.Y. Jan. 13, 2021) ("If Arenas is intending to assert a cause of action for invasion of privacy, such a claim is not recognized under New York law.").  Therefore, this claim must be dismissed for failure to state a claim upon which relief can be granted.  Further, the dismissal will be with prejudice because, given that New York law does not recognize such a claim, any attempt to replead this can would be futile.  *See Peterec-Tolino*, 364 F. App'x at 711.

## VI.   **Leave to Amend**

Plaintiff's proposed constructive discharge claim against Transit is timely and properly exhausted.  (*See* Doc. 84 at 2.)  Given that Plaintiff claims she was "constructively discharged on October 11, 2019," (Doc. 82 at 3), which was after she filed the Second Amended Complaint on September 30, 2019, (Doc. 54), I grant her permission to file a motion for leave to file a third amended complaint containing a constructive discharge claim.  However, because "[i]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII" or under ADA, *Tomka v. Seiler Corp*., 66 F.3d 1295, 1313 (2d Cir. 1995); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 295 (S.D.N.Y. 2004), Plaintiff's constructive discharge claim can only proceed against the Transit, not against any individual defendants.[12]

Further, Plaintiff also alleged NYLL violation against the Transit Defendants, but without ever specifying the statutory provision that provides the basis of her claim.  Plaintiff's NYLL claim was based the allegations that the Transit Defendants "made deductions from Plaintiff's wages" and "alter[ed her] employment relationship."  (SAC ¶¶ 168, 172.)  The Transit Defendants did not address this claim in their motion to dismiss.  Because Plaintiff's vague and generic allegations are not sufficient to make out any NYLL violations, her NYLL claim is dismissed without prejudice to be repleaded in the third amended complaint.

## VII.   **Conclusion**

For reasons above, Plaintiff's Title VII, ADA, EPA, §§ 1981 and 1985, IIED, defamation, and invasion of privacy claims, as well as the § 1983 claims against Transit and Byford, and the FMLA claim against Byford, are hereby dismissed, and the Transit Defendants'

---

[12] Accordingly, I decline to dismiss Plaintiff's NYSHRL and NYCHRL claims for lack of supplemental jurisdiction at this point, because I am granting Plaintiff leave to file a motion for leave to file a third amended complaint containing a constructive discharge claim under Title VII and Plaintiff's FMLA claim against Transit, Costa, Cassella, and Syldor survive the motion to dismiss.

motion to dismiss these claims is GRANTED.  Plaintiff's § 1985 and DFR claims against Local

3652 are hereby dismissed, and Local 3652's motion to dismiss these claims is GRANTED.

It is further ORDERED that on or before April 24, 2022, Plaintiff shall file a motion for

leave to file a third amended complaint, and shall attach a proposed third amended complaint

with the motion.

The Clerk is respectfully directed to close the open motions on the docket, and mail a

copy of this order to the pro se Plaintiff.

SO ORDERED.

Dated:  March 24, 2022
          New York, New York

Vernon S. Broderick
United States District Judge